**GREGORY KAFOURY**
OSB #741663
Kafoury@kafourymcdougal.com
**MARK McDOUGAL**
OSB #890869
mcdougal@kafourymcdougal.com
**JASON KAFOURY**
OSB #091200
jkafoury@kafourymcdougal.com
Kafoury & McDougal
411 SW 2nd Ave, Suite 200
Portland OR 97204
Telephone: 503-224-2647
Fax: 503-224-2673

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| B.B.,<br><br>                      Plaintiff,<br><br>   v.<br><br>THE ARCHDIOCESE OF PORTLAND IN OREGON, an Oregon corporation; THE ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON AND SUCCESSORS, and a corporation sole, d.b.a., THE ARCHDIOCESE OF PORTLAND IN OREGON,<br>                      Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**(Sexual battery of a Child/*Respondeat Superior*, Intentional Infliction of Emotional Distress/*Respondeat Superior*)**<br><br>JURY TRIAL DEMANDED<br><br>Not Subject to Mandatory Arbitration |

Plaintiff demands a jury trial and alleges:

**STATEMENT OF JURISDICTION AND VENUE**

**1.**

This Court has jurisdiction over this case pursuant to 28 U.S.C. 1334(A) and Sec. 6.4.3 and 11.1 of the Third Amended and Restated Joint Plan of Reorganization of Debtor, Tort Claimants Committee, Future Claimants Representative, and Parish and Parishioners Committee,

PAGE 1 -   COMPLAINT (B.B.)

dated April 9, 2007 in the matter of *The Roman Catholic Archbishop of Portland in Oregon and Successors, and a Corporation Sole, d.b.a., The Archdiocese of Portland in Oregon*, Debtor, United States Bankruptcy Court for the District of Oregon, case number 04-37154-ELP11 (2007) ("The Plan").  Venue is proper in this court pursuant to 28 U.S.C. 1409(a) and 28 U.S.C. 1391(B), pursuant to the above-cited paragraphs of The Plan.

## PARTIES

### 2.

Plaintiff "B.B." is an adult male born in the year 1973. At all times relevant to the acts alleged in this complaint, plaintiff was an unemancipated minor. "B.B." is a pseudonym. Plaintiff uses a pseudonym as he was the victim of childhood sexual abuse and disclosure of his identity to the public would further victimize him and cause emotional injury.  Plaintiff's claims are sensitive in nature, and proceeding under a fictitious name will minimize additional fear, embarrassment, humiliation, and possible retaliation from third parties that public disclosure of plaintiff's identity might otherwise generate. Plaintiff will inform defendants of plaintiff's identity and thus defendants will not be prejudiced by plaintiff proceeding under a fictitious name.

## CLAIMS FOR RELIEF

### Child Sexual Battery/Respondeat Superior

### 3.

At all times relevant to this complaint, the Archdiocese of Portland in Oregon and the Roman Catholic Archbishop of Portland in Oregon, d.b.a. the Archdiocese of Portland in Oregon (hereinafter referred to as "defendants") were and are Oregon corporations. At all times relevant to this complaint, defendants owned, controlled, and operated Holy Redeemer Catholic Church.

//
//
//
//

PAGE 2 -   COMPLAINT (B.B.)

4.

Plaintiff became acquainted with Fr. Pius Brazauskas in approximately 1981. The acts of sexual abuse complained of herein took place during the plaintiff's minority.

**5.**

At all times relevant to this complaint, Fr. Pius Brazauskas was an employee and agent of defendants. During that employment and agency, Fr. Brazauskas provided pastoral services to plaintiff and was acting within the course and scope of his employment or agency in performing duties for and on behalf of the defendants.

6.

At all times relevant to this complaint, defendants empowered Fr. Brazauskas to perform all duties of a priest, including pastoral and religious services, counseling, spiritual and moral guidance, and religious instruction, and other duties of a priest. Defendants knew that as part of his duties as a priest, Fr. Brazauskas would be in a position of trust and confidence with children and their families, including the plaintiff in this case. Defendants retained the right to control the means, methods, and physical details of any priest with faculties in the Archdiocese.

7.

At all times relevant to this complaint, defendants also held Fr. Brazauskas out as a "priest" through the act of public ordination and the granting of faculties to Fr. Brazauskas in the Archdiocese. At all times relevant to this complaint, defendants, in public documents and statements, proclaimed that its priests were subject to a set of behavioral parameters, including celibacy, and were therefore safe and trustworthy. Allowing Fr. Brazauskas to act as a priest was a signal to the public that Fr. Brazauskas comported with defendants' internal rules on the proper conduct of priests.

8.

At all times relevant to this complaint, defendants invited plaintiff and his family and all other members of the public to enter into a special, fiduciary relationship with the Roman Catholic Church, in part inviting plaintiff and his family to entrust the Church with their spiritual

PAGE 3 -   COMPLAINT (B.B.)

matters and encouraging plaintiff to submit to the rules of the Church in exchange. At all times relevant to this complaint, one of the teachings of the Roman Catholic Church was a firm and consistent obedience to any instruction from a Roman Catholic priest. Plaintiff was raised in this belief, and it formed the basis for his relationship with Fr. Brazauskas in this case. In particular, defendants encouraged plaintiff and his family to involve the defendants' various priests frequently in their lives, and generally conditioning plaintiff – consistent with Defendants' teachings on how children should act toward priests – to respect, obey and revere any priest of the Roman Catholic faith.

9.

For the purposes of furthering his duties as a priest, Fr. Brazauskas sought and gained the trust, friendship, admiration and obedience of the plaintiff in this case. As a result, plaintiff was conditioned to trust Fr. Brazauskas, to comply with Fr. Brazauskas's direction, and to respect Fr. Brazauskas as a person of authority in religious, spiritual, moral and ethical matters.

11.

While plaintiff was invited to and did visit Fr. Brazauskas at his home, Fr. Brazauskas befriended plaintiff, and "rewarded" him with candy and pocket change. The abuse began when B.B. was approximately 9 years old in 1981-1982. The course of conduct described above is hereinafter collectively referred to as "grooming".

12.

Fr. Brazauskas used the grooming process described above to accomplish his acts of abuse of the plaintiff. Fr. Brazauskas's grooming was (1) committed in direct connection and for the purposes of fulfilling Fr. Brazauskas's employment and agency with the defendants; (2) committed within the time and space limits of his employment and agency as a priest; (3) done directly in the performance of his duties as a priest; (4) undertaken, at least in part, with the desire to serve defendants; (5) generally actions of a kind and nature which Fr. Brazauskas's was required to perform as a priest; (6) and done at the direction of, and pursuant to, the power vested

in him by defendants. In the alternative, acts within the course and scope of Fr. Brazauskas's employment as agents for defendants led to or resulted in plaintiff's abuse.

13.

Fr. Brazauskas, while acting within the course and scope of his employment and agency, and using the authority and position of trust as a priest and agent for the defendants – through the grooming process – induced and directed plaintiff to engage in various sexual acts with him. The sexual abuse resulted from a progressive series of actions that began with and continued to involve Fr. Brazauskas's performance of the ordinary and authorized duties of a priest, and/or the abuse occurred during occasions when Fr. Brazauskas had authority over plaintiff in his position as priest for defendants. Specifically, Fr. Brazauskas sexually abused and molested plaintiff when plaintiff was approximately 9 years old at his home, in the following ways:

(a) Fr. Brazauskas placed his hands into B.B.'s pants, fondling B.B.'s genitals on multiple occasions;

(b) Fr. Brazauskas touched B.B.'s penis and anus with at least two of his fingers, for several minutes;

(c) Fr. Brazauskas placed his hand on B.B.'s thigh and rubbed back and forth on multiple occasions;

(d) Fr. Brazauskas kissed B.B. on the mouth on multiple occasions;

(e) Fr. Brazauskas forced B.B. to lay on top of him in his bedroom on his bed, while Fr. Brazauskas would rub B.B.'s buttocks against Fr. Brazauskas crotch/penis on multiple occasions.

14.

As a result of Fr. Brazauskas's sexual abuse, molestation, and breach of authority, trust, and position as a priest, plaintiff suffered noneconomic damages as follows:

(a) Plaintiff has suffered and/or will suffer debilitating physical and emotional injury, including pain and suffering, physical and emotional trauma, and permanent

psychological damage – distinct in time and logic from the abuse itself – all to his noneconomic damages in an amount to be proven at the time of trial.

15.

As an additional result of Fr. Brazauskas's sexual abuse, molestation, and breach of authority, trust, and position as a priest, plaintiff suffered economic damages as follows:

(a) Plaintiff incurred or will incur costs for counseling, psychiatric, psychological, and medical treatment, all to his economic damages in an amount which will be proven at the time of trial.

16.

B.B. did not discover the causal connection between the injury and the above child abuse, nor in the exercise of reasonable care should he have discovered the causal connection between the injury and the child abuse, more than five years prior to filing this action.

## FIRST CLAIM FOR RELIEF

(Sexual Battery of a Child/*Respondeat Superior*)

17.

Plaintiff realleges and incorporates by reference paragraphs 1-16, above.

18.

The abuse described in paragraph 13, above, constituted a harmful and offensive touching of plaintiff, to which plaintiff could not and did not consent.

19.

As a result of Fr. Brazauskas's abuse of plaintiff and Fr. Brazauskas's breach of authority, trust and position as a priest and authority figure to the plaintiff, plaintiff has suffered economic and noneconomic damages as detailed in paragraphs 14 and 15, above.

20.

In molesting plaintiff, Fr. Brazauskas acted with malice or a reckless and outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of plaintiff. Punitive damages against an agent or attributable to a

PAGE 6 -   COMPLAINT (B.B.)

principal when conduct within the course and scope of agency leads to or results in the tort. Plaintiff is entitled to punitive damages against each defendant in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

(Intentional Infliction of Emotional Distress/*Respondeat Superior*)

21.

Plaintiff realleges paragraphs 1-16, above.

22.

Fr. Brazauskas, while engaging in the grooming process described above, knowingly and intentionally caused severe emotional distress to plaintiff when he sexually abused plaintiff. Plaintiff did in fact suffer severe emotional distress as a result of this abuse, and the sexual abuse of a child is beyond the bounds of all socially tolerable conduct.

23.

As a result of Fr. Brazauskas's intentional infliction of emotional distress on plaintiff and Fr. Brazauskas's breach of authority, trust and position as a priest and authority figure to plaintiff, plaintiff has suffered economic and noneconomic damages as detailed in paragraphs 14 and 15, above.

24.

In molesting plaintiff, Fr. Brazauskas acted with malice or a reckless and outrageous indifference to a highly unreasonable risk of harm with a conscious indifference to health, safety, and welfare of plaintiff. Punitive damages against an agent are attributable to a principal when conduct within the course and scope of agency leads to or results in the tort. Plaintiff is therefore entitled to punitive damages against each defendant in an amount to be proven at trial.

WHEREFORE, plaintiff prays for judgement against defendants as follows:

1. Noneconomic damages for plaintiff in an amount to be determined by a jury at the time of trial;
2. Economic damages for plaintiff in an amount to be determined by a jury at the time of trial;

3. Punitive damages in an amount to be determined by a jury at the time of trial;

4. For plaintiff's costs and disbursements incurred; and

5. For any other relief this Court deems just and equitable.

Dated: May 16, 2025.

s/ Mark McDougal

Gregory Kafoury, OSB #741663
Kafoury@kafourymcdougal.com
Mark McDougal, OSB #890869
mcdougal@kafourymcdougal.com
Jason Kafoury, OSB #091200
jkafoury@kafourymcdougal.com
Attorneys for Plaintiff

PAGE 8 -   COMPLAINT (B.B.)